CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 17 2005

JOHN F. CORCORAN, CLERK
BY:
      DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| GERMAINE GRAVES, )<br>     Plaintiff, )<br> )<br>v. )<br> )<br>JO ANNE B. BARNHART, )<br>COMMISSIONER OF )<br>SOCIAL SECURITY, )<br>     Defendant. ) | | CIVIL ACTION NO. 6:04cv00061<br><br>By:   Michael F. Urbanski<br>         United States Magistrate Judge |

## REPORT AND RECOMMENDATION

Plaintiff Germaine Graves ("Graves") brought this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner of Social Security denying her claim for disability insurance benefits ("DIB") and Social Security Income ("SSI") under Title II and XIV of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. On December 28, 2004, this case was referred to the undersigned for report and recommendation as to any dispositive motions.

Having reviewed the record and after briefing and oral argument, it is recommended that the Commissioner's motion for summary judgment be granted as there is substantial evidence to support her decision.

## FACTUAL AND ADMINISTRATIVE RECORD

Plaintiff is thirty-six years old and has completed high school as well as some nursing training. (Administrative Record, hereinafter "R.," at 99, 129-30.) Plaintiff has previously worked as a fast food worker, as a worker in a grocery store, as a factory worker, and as an assistant in a nursing home. (R. 141) Plaintiff filed an application for DIB on March 4, 2002, and an application for SSI on March 15, 2002. (R. 99, 314) Plaintiff's claims were denied initially and upon reconsideration. (R. 68, 73, 317, 323) Following an administrative hearing on

June 27, 2003, an administrative law judge ("ALJ") found that plaintiff was not disabled as provided under the regulations. (R. 19-34) The Commissioner's decision became final for the purposes of judicial review when the Appeals Council denied plaintiff's appeal on October 15, 2004. (R. 7-10) Plaintiff then filed an action with this court challenging the Commissioner's decision.

Plaintiff alleges disability due to knee pain since January 23, 2002. On January 25, 2002, plaintiff had surgery on her left knee at Centra Health. (R. 277-78, 280)

It is clear that plaintiff had difficulties following her prescribed course of treatment following her surgery. Following this surgery, plaintiff was treated by William E. Albers, M.D., who stated in February 2002 that until plaintiff built up her left knee muscles, plaintiff's knee would not track perfectly and the pain would not stop. (R. 288) Dr. Albers noted in February 2002 that plaintiff had not been attending therapy sessions, which were "very important" for her treatment. (R. 288) In March 2002, Dr. Albers told plaintiff that there was "no other out for her than aggressive work in PT." (R. 288) On March 18, 2002, Dr. Albers stated that "the ball remains in [plaintiff's] court" and that the success of plaintiff's rehabilitation was in her hands. (R. 287) The doctor noted that his hands were "tied" due to plaintiff's noncompliance with directives regarding physical therapy. (R. 287)

On June 18, 2002, Eric Kenny, M.D. examined plaintiff. (R. 294-95) Plaintiff's examination was normal although the doctor noted that she suffered from joint pain. (R. 294)

In July 2002, x-rays taken of plaintiff's right knee showed a small amount of spurring but otherwise were basically normal. (R. 283) Although plaintiff complained of pain, Dr. Albers was hesitant to use any treatment other than the most conservative approaches. (R. 285) At this

2

time, Dr. Albers gave plaintiff a note releasing her to work that included no specific restrictions although it indicated that plaintiff might need help with squatting and stair-climbing activities. (R. 284)

On September 25, 2002, Dr. Albers' nurse signed a note indicating that the arthritis in plaintiff's knees made it difficult for plaintiff to perform at a job requiring much standing, walking, lifting, or climbing. (R. 304) She also noted that plaintiff might also have problems when required to sit for extended periods due to stiffness. (R. 304)

Plaintiff had a right knee arthroscopy on November 4, 2002. (R. 306-07) On November 13, 2002, the doctor stated that plaintiff had improvement with her exercises. Albers stated that "I don't think she really understands the importance of these." (R. 283) On December 4, 2002, Dr. Albers stated that plaintiff was "coming along slowly, but surely." Plaintiff was directed to continue physical therapy and anti-inflammatory medication. (R. 282)

On January 2, 2003, plaintiff complained of pain even though she had no appreciable crepitation or obvious patellar maltracking. Albers stated that, "[i]n short, [plaintiff's] symptoms continue to outstrip her findings." (R. 312) On March 26, 2003, Dr. Albers stated that he did not feel that there was anything that prohibited plaintiff from sitting and doing a job. (R. 313) He stated that he had explained to her that any problem with sitting, her back, etc., is not what he had treated plaintiff for and that therefore, he could not restrict her sitting. (R. 313)

On May 12, 2003, Dr. Albers wrote a letter to plaintiff's attorney which stated that sit-down work would not be harmful, if plaintiff could "get up and move around for a few minutes periodically." (R. 305) Dr. Albers said that he could not measure the level of discomfort plaintiff would have, and that her knee pain would prevent her from walking eventually.

3

(R. 305) Dr. Albers stated that he suspected that plaintiff was "partially disabled" by her knee condition. (R. 305)

During the administrative hearing, a vocational expert testified that a hypothetical person with plaintiff's knee complaints could be a surveillance system monitor and could do other jobs as well and be allowed to move around so long as she did not have to keep pacing when she was not sitting down. (R. 54-56)

## STANDARD OF REVIEW

The court's review is limited to a determination as to whether there is a substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

## ANALYSIS

Plaintiff contends that the ALJ erred by finding that plaintiff could return to her past relevant work. At oral argument, plaintiff conceded that she could perform sedentary work, but disagreed that the Commissioner met her burden at Step 5 of establishing that work existed in the national economy which plaintiff could perform. Plaintiff indicates that her previous job would not give her the opportunity to move around that Dr. Albers opined that she needed.

4

Plaintiff first argues that she needs to walk around at will and more frequently than a regular sit/stand option job – including her previous work – would allow. However, this position is not supported by the evidence in the record. First, plaintiff lacks the objective findings to support this diagnosis. Although plaintiff had surgery on both of her knees, it is evident in the record that the root of much of plaintiff's current pain is her failure to follow prescribed treatment. Failure to follow prescribed treatment without good reason is grounds for denial of a claim because it is inconsistent with a finding of disability. See English v. Shalala, 10 F.3d 1080, 1084 (4th Cir. 1993) (holding that plaintiff's poor motivation regarding treatment was a factor to consider in determining that plaintiff was not disabled); Hays v. Sullivan, 907 F.2d 1453, 1457 (4th Cir. 1990) (holding that the refusal to have recommended surgery may discredit claim of disability); see also Thomas v. Sullivan, 928 F.2d 255, 259 (8th Cir. 1991) (holding that the ALJ may consider plaintiff's willingness to submit to treatment in evaluating a claim of disability).

Additionally, over the course of treatment, Dr. Albers noted that plaintiff's condition improved. By June 2002, the objective medical evidence no longer supported plaintiff's complaints of disabling left knee pain. Dr. Albers noted a great improvement in patellar smoothness and tracking and no major pathology in the knee. (R. 287) Dr. Kenny also noted no definite evidence of polyarthritis. (R. 294) In July 2002, x-rays of plaintiff's right knee were also normal but for some spurring. (R. 283) Again, Dr. Albers stressed conservative measures such as exercise and anti-inflammatory medication, and released plaintiff to work with no specific limitations. (R. 284-85) Plaintiff insisted on surgery on her right knee even though Dr. Albers prescribed a more conservative treatment. (R. 284-85, 306) After the surgery, Dr. Albers

Case 6:04-cv-00061-NKM-mfu   Document 15   Filed 08/17/05   Page 5 of 9   Pageid#: 54

noted that plaintiff was improving with exercises but was "coming along slowly, but surely."

(R. 282)

Social Security regulations place the burden of production of evidence on plaintiff. Specifically, the regulations state that:

> [w]hen evidence is needed to prove your eligibility or your right to continue to receive benefit payments, you will be responsible for obtaining and giving the evidence to us. We will be glad to advise you what is needed and how to get it and we will consider any evidence you give us.

20 C.F.R. § 404.704.

The regulations further state that plaintiff has the obligation to bring to the Agency's attention everything that shows that she is disabled. See 20 C.F.R. § 404.1512(a). Here, given the evidence in the record, the ALJ properly determined that plaintiff could perform sedentary work. Plaintiff counters, however, that Dr. Albers' opinion prevents her from doing her past relevant work because it states she needs to move about "periodically." Plaintiff has presented no evidence to challenge the ALJ's conclusion that these periodically-required movements could not be accommodated through regularly scheduled breaks. Given that plaintiff did not produce such evidence, the ALJ made no error in his determination that work exists in the national economy that plaintiff could perform.

Further, plaintiff argues that the ALJ erred in finding that plaintiff could perform her past relevant work as an inspector/assembler of phones because he did not properly consider the extent of plaintiff's need to periodically walk around founded principally upon Dr. Albers' May 12, 2005 report. It is clear that the ALJ need not include a limitation, lacking any objective medical findings or support, in a hypothetical question to a VE. See Walker v. Bowen, 889 F.2d

6

47, 50-51 (4th Cir. 1989)(stating that hypothetical questions must include those impairments supported by the evidence). Here, the ALJ found that there was no credible basis for determining that plaintiff should be allowed to walk about whenever she wanted to during the course of the workday or that she must be allowed to walk away from her work station during times other than standard break periods, stating:

> I find that suggestions that [plaintiff] must be given "freedom to roam whenever or wherever she wishes" during the workday have no credible basis in the medical record and have no purpose other than to force a vocational expert to say that the claimant cannot perform any job.

(R. 27) Despite plaintiff's argument, Dr. Albers' opinion does not require that plaintiff only work in a job at which she can move around at will. Rather, Dr. Albers opined that "certainly sit-down work would not be harmful as long as she were allowed (as you mention in your letter) to get up and move around for a few minutes periodically."[1] (R. 305) The ALJ appropriately concluded that this limitation was consistent with sedentary work allowing for periodic opportunities to move around at scheduled breaks. Indeed, plaintiff testified that her former job as telephone inspector allowed her to stand or sit. (R. 57) In short, the medical record does not support plaintiff's contention that she must be allowed to get up and walk around whenever she pleased, but rather supports the ALJ's conclusion that plaintiff can do sedentary work which allows her to sit or stand and move around at periodic breaks. There is nothing in Dr. Albers' medical records or May 12, 2003 letter to counsel that compels the exaggerated conclusion that plaintiff can only work at a job which provides unlimited freedom of movement.

---

[1] Dr. Albers May 12, 2003 letter apparently responds to a letter from plaintiff's counsel dated May 7, 2003, which does not appear in the record.

7

As such, the ALJ's residual functional capacity ("RFC") determination is well-supported. As plaintiff's past relevant work as a cellular phone inspector was sedentary and allowed for her to alternate sitting and standing, the ALJ's determination that plaintiff could perform her past relevant work, and was therefore not disabled, was supported by substantial evidence. Under these circumstances, plaintiff has not demonstrated that she cannot do her past relevant work as that work is consistent with the limitation contained in Dr. Albers' report.

As it is clear that substantial evidence supports the ALJ's decision that plaintiff can perform her past relevant work, there is no need to reach the question whether the Commissioner met her burden at Step 5.[2]

Given the deferential standard of review provided under 42 U.S.C. § 405(g), the court must affirm the decision of the ALJ as there is more than enough evidence to support the conclusion that plaintiff was not disabled as defined under the Social Security Act. See Pierce v. Underwood, 407 U.S. 552, 565 (1988); King v. Califano, 559 F.2d 597, 599 (4th Cir. 1979). As such, it is the recommendation of the undersigned that defendant's motion for summary judgment be granted.

In affirming the final decision of the Commissioner, the court does not suggest that plaintiff is totally free of all pain and subjective discomfort. The objective medical record simply fails to document the existence of any condition which would reasonably be expected to result in total disability for all forms of substantial gainful employment. It appears that the ALJ properly

---

[2] While unnecessary for this recommendation, it is plain that the Commissioner met her burden at Step 5 as well based on the testimony of the VE that a hypothetical person having plaintiff's characteristics could work in a surveillance monitor position. (R. 58)

8

Case 6:04-cv-00061-NKM-mfu   Document 15   Filed 08/17/05   Page 8 of 9   Pageid#: 57

considered all of the subjective and objective factors in adjudicating plaintiff's claim for benefits. It follows that the Commissioner's decision is supported by substantial evidence.

## CONCLUSION

For the reasons outlined above, it is the recommendation of the undersigned that the Commissioner's motion for summary judgment be granted. The Clerk is directed immediately to transmit the record in this case to the Hon. Norman K. Moon, United States District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk of the Court hereby is directed to send a certified copy of this Report and Recommendation to plaintiff and all counsel of record.

Enter this  17  day of August, 2005.

_____
Michael F. Urbanski
United States Magistrate Judge